| | | |
|---|---|---|
| **OWEN HARE** <br> 3700 Toone Street, Apt. 2632 <br> Baltimore, Maryland 21224-5170 <br><br> and <br><br> **KAREN HARE** <br> 4 Barrow Court <br> Towson, Maryland 21204-1806 <br><br> *Plaintiffs* <br><br> v. <br><br> **NAVIENT SOLUTIONS, INC.** <br> 2001 Edmund Halley Drive <br> Reston, VA 20191 <br><br> **SERVE ON:** <br> **CSC-LAWYERS** <br> **INCORPORATING SERVICE CO.** <br> 7 St. Paul Street <br> Suite 820 <br> Baltimore, MD 21202 <br><br> *Defendant* | * * * * * * * * * * * * * * | **IN THE** <br><br> **CIRCUIT COURT** <br><br> **OF MARYLAND** <br><br> **FOR** <br><br> **BALTIMORE COUNTY** <br><br> CASE NO. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Owen Hare and Karen Hare, by and through their attorneys, Jane Santoni, Kathleen P. Hyland, and Williams & Santoni, LLP, hereby file this Complaint against Navient Solutions, Inc. and state as follows:

## INTRODUCTION

This is a consumer protection matter that arose when a student loan borrower, who was current on his student loan, attempted to enter into a voluntary

forbearance agreement with his student loan servicer. The parties agreed to put the loan into forbearance, which required a fifty-dollar fee. Despite assurances that the student loan servicer would withdraw the forbearance fee on December 3, 2014, it erroneously withdrew funds electronically a month early, on or about November 3, 2014. After causing the account to acquire insufficient fund fees and overdraft fees, the servicer then unilaterally cancelled the forbearance agreement and erroneously withdrew another electronic payment from the borrower's account. These actions caused hundreds of dollars in bank fees and made the borrower fall behind in payments to other creditors.

When the borrower attempted to fix this apparent discrepancy, the servicer demanded he pay the "missed" payments and interest for the time the loan was supposed to be in forbearance. After causing the borrower to fall behind in payments from the time he believed the loan to be in forbearance, the servicer then began harassing the borrower and his co-signer by using an auto-dialer to call their mobile phone and landline, often twice per day. Although the borrower has spent hours on the telephone with over thirty representatives attempting to fix his account, and the servicer has admitted to erroneously withdrawing funds, the servicer has refused to rectify his account.

The Plaintiffs file this action to seek relief from the Defendant's many violations of the Electronic Funds Transfer Act ("EFTA"), the Telephone Consumer Protection Act ("TCPA"), the Maryland Telephone Consumer Protection Act ("MTCPA"), the Maryland Consumer Debt Collection Act ("MCDCA") and the

Maryland Consumer Protection Act ("MCPA") and for other relief as this Court deems fit.

## PARTIES

1. Plaintiff Owen Hare ("Hare") is a consumer who resides in Baltimore, Maryland. Plaintiff is a practicing attorney in good standing with the Maryland bar. Plaintiff borrowed a private student loan that is subject to this dispute to study for the Maryland bar examination.

2. Plaintiff Karen Hare is also a consumer who resides in Towson, Maryland. Plaintiff is Hare's mother and co-signed the student loan that is the subject of this dispute.

3. Defendant Navient Solutions, Inc. ("Navient") is a Delaware corporation engaged in the business of collecting private and federal student loan debts from consumers. Defendant Navient is registered to do business in Maryland with the State Department of Assessments and Taxation. The Defendant is a "collector" as defined in Md. Code Ann. Com. Law § 14-201.

## JURISDICTION AND VENUE

4. The Circuit Court has exclusive original subject matter jurisdiction over the claims asserted herein because the Plaintiffs seek in excess of $30,000 in damages and have exercised their rights to a trial by jury.

5. The Circuit Court can exercise personal jurisdiction over the Defendant. Defendant regularly conducts business in Baltimore County, Maryland. The cause of action for this dispute arose in Maryland.

6. This Court has jurisdiction and venue of all causes of actions alleged herein, as the claims for relief accrued in Maryland; Defendant regularly conducts business in Baltimore County.

## FACTUAL ALLEGATIONS

7. The alleged debt subject to this dispute is a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA, as it arose from a student loan transaction.

8. The Defendant is a "collector" as defined in Md. Code Ann. Com. Law § 14-201.

9. The Plaintiffs are "consumers" as defined in 15 U.S.C. § 1693a(6) of the EFTA and § 13-101(c) the MCPA.

10. The private student loan that is subject to this dispute is a "consumer debt," as defined by § 13-101(d) the MCPA.

11. Plaintiff Hare maintained a deposit account, which is an "account" as defined by the 15 U.S.C. § 1693a(2) of the Electronic Funds Transfer Act.

12. The Plaintiff's deposit account is with M&T Bank and ends in 0133.

13. On or about June 5, 2009, Plaintiff Hare applied for and received a loan from Sallie Mae, Inc. in the amount of $15,000.00 with a 13.25% interest rate (the "student loan"). The student loan account number ends in 4114.

14. Hare's mother, Karen Hare, co-signed the student loan.

15. Plaintiff Hare received the student loan for personal, household, and educational purposes. This was a bar study loan to cover living expenses while Hare sat for the Maryland bar examination.

16. On or about October 13, 2014, Sallie Mae, Inc. formed Defendant Navient. Navient became the servicer for the student loan.

17. Plaintiff Hare also has federal student loans, which are not part of this dispute.

18. Prior to this dispute in November 2014, Plaintiff Hare's account was in good standing and the student loan was not in default.

19. Hare made regular monthly payments on this account of $167.88.

20. In 2014, Plaintiff Hare decided to open a private law practice. In order to manage his finances and have more income to invest in his business, he contacted Navient to inquire about repayment options.

21. On or about November 3, 2014, he telephoned Navient and requested that his federal and private loan be placed into forbearance. At the time of this request, Hare owed $15,204.30 on the student loan.

22. According to Navient's website, "Forbearance is a period during which your monthly loan payments are temporarily suspended or reduced. Payments on your loan principal are postponed, but interest will accrue during the forbearance period. Forbearance is intended to help you out in times of temporary need." *See* https://www.navient.com/loan-customers/postponing-payments/deferment-and-forbearance/, last accessed November 3, 2015.

23. Hare relied on Navient's statements and believed that forbearance was a good option to keep his private student loan in good standing and his credit intact.

24. When Hare contacted Navient, he was not required to place his private loan into a forbearance, nor was he in default on the loan. He made his last payment on or around October 3, 2014. *See* **Exhibit 1**, "Account Statement, 12/3/2014."

25. Upon information and belief, the telephone communication with Navient was recorded.

26. During this conversation, Navient's representative advised Hare that the forbearance process required a one-time, refundable $50.00 fee ("forbearance payment").

27. Hare advised that he did not have $50.00 in his bank account that day, but could call back within days when he had deposited the money.

28. Navient's representative proposed that he schedule the forbearance payment for December 3, 2014.

29. Hare accepted this, and advised that he would have money in his bank account on December 3, 2014 to make the $50.00 payment. Hare firmly advised Navient that he did not have it at the time, and that he would not be able to make the payment for at least a week.

30. Hare offered to call back on a later date during November 2014, when he had the forbearance fee.

31. Navient's representative provided verbal assurances that his payment would definitely go through on December 3, 2014, and would not be processed before that date.

32. Hare relied on the Navient representative's statement that the payment would be electronically deducted from his account no sooner than December 3, 2014.

33. On November 3, 2014, Hare also placed his federal loans with Navient into forbearance.

34. On November 3, 2014, despite Navient's assurances, and unknown to Hare, Navient electronically deducted the forbearance payment from Hare's M&T bank account. *See* **Exhibit 2**, "M&T Check from Hare to Navient."

35. Navient did not have authority to deduct the forbearance payment on November 3, 2014.

36. On November 4, 2014, Navient sent Hare an electronic notification letter to confirm that his private loan was in forbearance. *See* **Exhibit 3**, "11-4-2014 Forbearance Approval."

37. On November 4, 2014, when Navient's payment posted to Hare's bank account, the account became overdrawn, and incurred overdraft fees of $38.50 for each insufficient fund withdrawal.

38. After Navient completed its automatic withdrawal, Hare's bank then rejected this payment for insufficient funds, charged overdraft fees, and caused Hare's other electronic payments to creditors to be declined.

39. On or about November 8, 2014, Navient sent Hare a notice stating that no monthly payment was due and that on December 3, 2014, "$0.00 will be debited from the designated bank account and credited to your loan account." *See* **Exhibit 4,** "Navient Statement from 11/8/2014."

40. On or about November 11, 2014, prior to when Hare believed Navient was taking his forbearance payment, Navient cancelled his private loan forbearance.

41. Upon information and belief, Navient sent Hare an electronic cancellation notice, which Hare did not receive until on or about December 3, 2014.

42. Upon information and belief, Navient backdated his account notices.

43. Without authorization from Hare, Navient reinstated his electronic payment plan to withdraw monthly payments of $167.88.

44. On December 3, 2014, on the date when Hare expected Navient to withdraw $50.00, without his authority, Navient attempted to draw a regular payment of $167.88 from Hare's M&T bank account.

45. After Navient completed its electronic withdrawal, Hare's bank then rejected this payment for insufficient funds, charged overdraft fees, and caused Hare's other electronic payments to creditors to be declined.

46. Hare challenged the insufficient fund fees and overdraft fees with M&T, but was not successful in having all of the charges reversed. *See* **Exhibit 5,** "M&T Bank Statements."

47. On or about December 3, 2014, Hare received notice that his student loan was no longer in forbearance and contacted Navient to resolve this error.

48. On or about December 3, 2014, Hare requested that Navient place his loan back into forbearance and fix his issue with M&T overdraft fees and insufficient funds.

49. Navient repeatedly refused to fix Hare's account and reinstate the forbearance.

50. In January 2015, Navient sent Hare notices for past due payments.

51. On or about January 2015, Hare told Navient to stop calling his cellular phone, number \*\*\*-\*\*\*-6417.

52. After Hare revoked consent for Navient to call his cellular phone, Navient called repeatedly.

53. After January 2015, Hare took screenshots of Navient's persistent calls.

54. On or about March 23, 2015, Navient sent Hare a notice stating that his account would be placed into collections with private attorneys and to call Joe Sbriglia, Senior Vice President of Collections at 855-258-0057 to resolve the debt. *See* **Exhibit 6,** "Letter from Navient to Hare, 3/23/15."

55. When Hare called 855-258-0057, the number appeared to be a facsimile line with no option to speak to a live Navient representative.

56. On March 24, 2015, Hare called the Navient collections department and asked to record the conversation. The Navient representative, Jody, code: E63691, consented to the recording for purposes of documenting what was said.

57. During this call, Jody advised that the person named in the correspondence that Hare received is not always the person that the consumer reaches. Jody did not address the issue of the incorrect number that leads calls to a fax machine.

58. During this call, Jody advised that to resolve his issue, Hare needed to pay $1,067.65 to bring the loan current.

59. During this call, Jody also advised that he should make the past due amount to be "taken off the of the dialer."

60. During this call, Jody agreed that Navient took the forbearance payment via autopay *incorrectly* in November 2014, and caused the account to be overdrawn with an "ungodly" amount of money, but accused Hare of never making the $50.00 payment. Jody alleged that because Navient withdrew the funds incorrectly, they never got paid for the forbearance fee, and therefore the forbearance never happened.

61. During this call, Jody accused Hare of trying to avoid pay the $50.00 fee.

62. During this call, Jody admitted that the $50.00 payment was wrongfully taken from Hare's bank account.

63. During this call, Jody accused Hare of having a delinquent account at the time he sought the forbearance, when he was in fact current on his loan at the time he sought forbearance.

64. On March 24, 2015, Jody mentioned that the she was not able to assist him and Hare advised that she could not find a resolution for him. Hare requested that she put him in touch with a compliance officer, or someone that could help him. Jody terminated the call because she had determined that he was not going to make a payment.

65. During this call, Hare stated that he had revoked his consent to make payments automatically when he applied for the forbearance.

66. Between December 2014 and March 2015, Navient representatives aggressively called Hare on his cellular phone on a daily basis. When Hare would finish speaking with them, on the same day, new representatives would call his land line.

67. Between December 2014 and March 2015, Navient representatives also aggressively called Hare's mother, Karen Hare on a daily basis.

68. According to Navient's representative, Jody, Navient was using an auto-dialer to contact the Plaintiffs.

69. Between December 2014 and March 2015, Hare spoke with between 30 and 40 representatives from Navient.

70. On or about December 2014, Karen Hare advised Navient that she was represented by an attorney.

71. In spite of this fact, Navient continued to make multiple calls to Karen Hare through March 2015, seeking to collect the disputed debt.

72. Karen Hare often received calls twice per day, which caused her extreme stress and anxiety for her son.

73. Since December 2014, Navient representatives have refused to correct Hare's account to reinstate the forbearance without making him pay the amount past due.

74. As a result of the Defendants' actions, Plaintiffs have suffered from actual and emotional damages including:

- Loss of funds from Owen Hare's bank account
- Bank fees and penalties for insufficient funds to Owen Hare's bank account
- Damage to both Plaintiffs' credit
- Denial of a new loan
- Loss of forbearance program status
- Annoyance and harassment from repeated debt collection calls
- Frustration, anger, stress, depression, inconvenience, loss of sleep, anxiety, and humiliation.

## COUNT ONE
## VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT
## 15 U.S.C.A. § 1693a, *et. seq.*
## (By Plaintiff Owen Hare Against Defendant Navient)

75. The Plaintiffs incorporate by reference the foregoing allegations of this Complaint.

76. Pursuant to 15 U.S.C. § 1693a(7), Navient executed an "electronic fund transfer" by taking $50.00 out of Owen Hare's bank account on November 3, 2014 when he had not consented to the transaction.

77. Pursuant to 15 U.S.C. § 1693a(12), Navient executed an "electronic fund transfer" by taking the regular payment amount $167.88 out of Owen Hare's bank account on December 3, 2014.

78. Pursuant to 15 U.S.C. § 1693a(12) and § 1693f(1), both of Navient's transfers were unauthorized and constitute errors.

79. Pursuant to 15 U.S.C. § 1693f(2), Navient's transfers were incorrect.

80. Pursuant to 15 U.S.C. § 1693m, Navient is liable for the actual damages that Plaintiff Owen Hare sustained. This includes overdraft fees and insufficient fund charges.

81. Pursuant to 15 U.S.C. § 1693m, Defendant Navient is also liable for statutory damages in an amount not less than $100 nor greater than $1,000, and attorney's fees.

WHEREFORE Plaintiff Owen Hare demands judgment for actual and statutory damages in excess of SEVENTY-FIVE THOUSAND DOLLARS

($75,000), against Defendant Navient, plus costs and attorney fees against the Defendant.

## COUNT TWO
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C.A. § 227 et. seq.
## (By Plaintiff Owen Hare Against Defendant Navient)

82. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

83. Defendant used an "automatic telephone dialing system" as defined by 47 U.S.C.A. § 227(a)(1).

84. Defendant willfully violated the TCPA with respect to the Plaintiff by using an auto-dialer to make calls to Plaintiff's cellular telephone after Plaintiff notified Defendant that it revoked consent for Defendant to call him at that number.

85. Defendant knowingly violated the TCPA with respect to the Plaintiff for each of the auto-dialer calls made to the Plaintiff's cellular telephone after Plaintiff revoked consent for Defendant to call him at that number.

86. Navient repeated placed non-emergency telephone calls to Plaintiff by using an automatic telephone dialing system without the Plaintiff's prior express consent, in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

87. Pursuant to 47 U.S.C. § 227, the TCPA allows treble damages for willful and knowing violations.

WHEREFORE Plaintiff Owen Hare demands judgment for actual and statutory damages, and enjoinder from further violations against Defendant Navient, plus costs and attorney fees, and any other such relief as the Court may deem proper.

### COUNT THREE
### VIOLATIONS OF THE MARYLAND TELEPHONE CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 14-3201 *et. seq.*
### (By Plaintiff Owen Hare Against Defendant Navient)

88. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

89. Pursuant to Md. Com. Law § 14-3201(2), a person may not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227.

90. For the reasons stated in Count Two, Defendant Navient violated the Telephone Consumer Protection Act, 47 U.S.C. § 227.

WHEREFORE, Plaintiff Owen Hare demands declaratory relief against Defendant Navient, stating that the Defendant's violations of the Federal Telephone Consumer Protection Act constitute a violation of the Maryland Telephone Consumer Protection Act, and for any other relief as this Court deems fit.

### COUNT FOUR
### VIOLATIONS OF THE MD. CONSUMER DEBT COLLECTION ACT
### Md. Code Ann., Com. Law § 14-201 *et. seq.*

91. The Plaintiffs incorporate by reference the foregoing allegations of this Complaint.

92. Plaintiffs incurred a debt, which was primarily for personal, family, or household purposes, and is therefore a "consumer transaction" as that term is defined by the MCDCA.

93. Defendant has attempted to collect a debt arising from a credit contract and is a "collector" within the meaning of the Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law § 14-201 (b).

94. Pursuant to § 14-202(6), a collector may not communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor.

95. Pursuant to § 14-202(8), a collector may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.

96. Pursuant to § 14-203, a collector in violation of the MCDCA is liable for any damages proximately caused by the violation. This explicitly includes damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

97. Defendant violated § 14-202(6) by communicating with both Plaintiffs in a frequency that harassed and annoyed them, often twice per day, and via auto-dialers.

98. Defendant violated § 14-202(6) by communicating with Plaintiff Owen Hare in writing to threaten him with a litigation deadline, with an inaccurate contact number that led him directly to Navient's fax machine.

99. Defendant violated § 14-202(8) by attempting to collect a debt that it did not have the legal right to collect, by: (1) attempting to collect the forbearance payment without authority; (2) attempting to collect the December payment when *the loan was in forbearance; (3) attempting to collect the total number of missed* payments between December and March 2015; and (4) threatening to accelerate the debt.

100. Defendant knowingly violated § 14-202(8), as Navient's representative admitted to wrongfully taking the $50.00 forbearance payment.

101. The Defendant's illegal actions in collecting this debt caused the Plaintiff to suffer costs, inconvenience, stress, humiliation, and mental anguish.

WHEREFORE, Plaintiffs Owen Hare and Karen Hare respectfully request the Court enter judgment in favor of Plaintiffs and against Defendant Navient for actual and emotional damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), plus interest and costs, attorney's fees, and such other relief as the nature of the case may require.

### COUNT FIVE
### VIOLATIONS OF THE MD. CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 13-101 et. seq.

102. The Plaintiffs incorporate by reference the foregoing allegations of this Complaint.

103. Plaintiffs are a "consumers" within the meaning of the Maryland Consumer Protection Act ("MCPA"), Com. Law § 13-101(c).

104. The Defendant is subject to all of the consumer protections mandated by the CPA which, among other things, prohibits unfair or deceptive practices in the extension of consumer credit and in the collection of consumer debts. MCPA, Com. Law §§ 13-303(c) and (d).

105. Defendant's actions in violation of the MCDCA constitute unfair or deceptive trade practices in violation of MCPA § 13-101(14)(iii).

106. Defendants actions in violation of the Maryland Telephone Consumer Protection Act constitute unfair or deceptive trade practices in violation of MCPA § 13-101(14)(xiv).

107. Defendant made misrepresentations to Plaintiff Owen Hare about the process and status of his forbearance.

108. In addition, Defendant made misleading oral statements when it advised Plaintiff Owen Hare that it would not withdraw funds from his bank account before December 3, 2014, and then immediately withdrew funds.

109. Defendant made misleading written statements when it confirmed the forbearance agreement in writing, but then did not honor the agreement, as to the private student loan.

110. Defendant caused actual damages to Plaintiff Owen Hare's bank account.

WHEREFORE, Plaintiffs Owen Hare and Karen Hare demand judgment in their favor against Defendant Navient and actual damages of SEVENTY-

FIVE THOUSAND DOLLARS ($75,000), plus interest, costs, attorney's fees, and such other relief as the nature of the case may require.

### NOTICE OF CLAIM FOR ATTORNEY'S FEES

Plaintiffs hereby give notice, pursuant to the Maryland Rules, that they seek attorneys' fees pursuant to statute, in this case.

Respectfully Submitted,

_____
Jane Santoni
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)


_____
Kathleen P. Hyland
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)

*Attorneys for Plaintiff*

### REQUEST FOR A TRIAL BY JURY

Plaintiffs request a trial by jury of any claims that may be determined by a jury.

Dated: November 3, 2015

_____
Kathleen P. Hyland